IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| TIMOTHY S. GALLAGHER, | CV-24-40-BU-KLD |
| Plaintiff, | |
| vs. | **ORDER** |
| MARTIN O'MALLEY, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Timothy S. Gallagher ("Gallagher") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 2.) Gallagher asks the Court to grant him social security disability insurance benefits and supplemental security income benefits or alternatively, to remand this action for further hearing. (*Id.* at 3–4.) The Commissioner opposes Gallagher's motion. (Doc. 10.)

## JURISDICTION

The Court retains jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Gallagher resides in Butte, Silver Bow County, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). (Doc. 2 at 1–2.)

## PROCEDURAL BACKGROUND

1

Gallagher filed an application for Title II disability insurance benefits and Title XVI supplemental security income benefits on July 22, 2021. (Doc. 5 at 19.) Gallagher's claims were denied upon initial review and on reconsideration. (*Id.* at 64–73; 86–95.) Gallagher requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 31–56.) The ALJ issued an unfavorable decision on May 31, 2023. (*Id.* at 16–29.) The Appeals Council denied Gallagher's request to review that decision. (*Id.* at 6–8.) This denial rendered the ALJ's decision the final decision of the Commissioner. *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision under the substantial evidence standard. *See* 42 U.S.C. § 405(g). The decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See id.*; *see also Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005) (internal citations omitted). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279 (internal quotations omitted).

The Court must "consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not

supported by substantial evidence in the record, but it may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

## DISABILITY CRITERIA

A claimant is disabled for purposes of the Social Security Act if (1) the claimant "suffers from a 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months'" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is unable to perform their previous work and also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. § 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

3

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), (e) 416.920(d), (e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof in the first four steps. *Id.* at 953. The Commissioner bears the burden at step five. *Id.* at 953–54.

## FACTUAL BACKGROUND

### I. ALJ Determination

The ALJ determined at the first step that Gallagher met the insured status requirements through December 31, 2026. (Doc. 5 at 21.) The ALJ further determined that Gallagher had not engaged in substantial gainful activity since his alleged onset date of July 12, 2021. (*Id.*)

4

The ALJ determined at step two that Gallagher suffered from the following severe impairments: degenerative disc disease, T12 compression fracture, neurocognitive disorder, traumatic brain injury, and seizure disorder (*Id.*) The ALJ found these severe impairments significantly limited Gallagher's ability to perform basic work activities. (*Id.* at 22.) The ALJ noted that in addition to the above listed severe impairments, Gallagher has been diagnosed with alcohol abuse and hepatitis C. The ALJ found, however, that these additional impairments had no more than a minimal impact on Gallagher's basic work-related activities. (*Id.*)

At step three, the ALJ found that Gallagher lacked an impairment or combination of impairments that met or medically equaled the severity described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, the Social Security regulations. (*Id.* at 22-24.) At step four, the ALJ determined Gallagher's residual functional capacity ("RFC"). (*Id.* at 24-28.) The ALJ followed a two-step process.

The ALJ found that Gallagher's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 25.) The ALJ concluded, however, that Gallagher's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 25-28) The ALJ

5

determined that Gallagher possesses the RFC to perform less than a full range of light work, subject to the following conditions:

> He can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and/or walk about six hours in an eight-hour workday and can sit about six hours. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. He should have only occasional exposure to extreme cold and excessive vibrations. He should work in an environment with no more than moderate noise levels (as defined by the Selected Characteristics of Occupations). He should avoid all exposure to hazardous machinery and unprotected heights. He can understand, remember and carry out detailed instructions, but would not be able to do complex instructions.

(*Id.* at 24.) The ALJ determined that Gallagher has the RFC to perform his past relevant work as a store clerk. (*Id.* at 28-29.) Accordingly, the ALJ found Gallager "not disabled" under the relevant sections of the Social Security Act. (*Id.* at 29.)

## II.  Gallagher's Position

Gallagher contends that the ALJ committed the following errors: failed to properly discuss Gallagher's ability to perform work activities; failed to demonstrate how Gallagher's testimony was not consistent with the record with the requisite degree of specificity; did not consider whether Gallagher's seizure disorder met the listed impairment epilepsy criteria; and erred in failing to incorporate all of Gallagher's impairments into the vocational consultant's hypothetical questioning. (Doc. 8.)

### III.    Commissioner's Position

The Commissioner asserts that the ALJ properly evaluated Gallagher's work abilities, reasonably evaluated the opinions on Gallagher's mental limitations, reasonably found Gallagher was not disabled, and used substantial evidence in soliciting the vocational expert's opinion in determining Gallagher's RFC. (Doc. 10.)

## DISCUSSION

### I.    Whether the ALJ failed to properly evaluate Gallagher's work abilities

Gallagher argues that substantial evidence in the record fails to support the ALJ's finding that Gallagher can carry out sustained work-related activities. (Doc. 8 at 15.) Gallagher argues the ALJ specifically failed to consider the limitations established by Montana state agency psychological consultants, the consultative examiner, and Dr. Mozer. (Doc. 8 at 15-18.)

Social Security regulations require an ALJ to assess a claimant's RFC based on all relevant medical and other evidence, including medical opinions, objective findings, daily activities, and the claimant's own statements. SSR 96-8p and 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ also must explain how the evidence supports each conclusion and provide specific, clear, and convincing reasons for discounting a claimant's allegations or a medical opinion. *Id*.

The ALJ applied these standards correctly and based his decision on substantial evidence in the record. The ALJ acknowledged Gallagher's significant impairments, including degenerative disc disease, T12 compression fracture, neurocognitive disorder, traumatic brain injury, and seizure disorder. (Doc. 5 at 22-24.) In evaluating Gallagher's work abilities, the ALJ considered that Gallagher had performed semiskilled work as a store clerk for many years despite his longstanding impairments, without substantial accommodations or evidence of a decline in function during this period. (*Id*.) The ALJ noted that Gallagher's continued employment undermined his claim that his symptoms prevented him from performing substantial gainful activity. (*Id. a*t 22.)

The ALJ further addressed Gallagher's allegations regarding the frequency and limiting impact of his seizures. Gallagher testified to having three or four grand mal seizures a year. The ALJ relied on the medical record, which documented only two grand mal seizures and one episode of fainting during the three-year period at issue. (*Id.* at 22.) This discrepancy allowed the ALJ to reasonably find that Gallagher's seizure disorder was better controlled than alleged and that his testimony was not entirely consistent with the evidence. (Doc. 10 at 6.)

In evaluating the medical opinion evidence, the ALJ considered Dr. Mozer's neuropsychological evaluations and the opinions of state agency psychologists, all

8

of whom suggested that Gallagher was limited to unskilled work performed at a reduced pace or with extra allowances. (Doc. 5 at 26-28.) The ALJ found these opinions unpersuasive because they were inconsistent with Gallagher's demonstrated ability to perform semiskilled work as a store clerk for several years, and because neither Dr. Mozer nor the state agency consultants identified concrete evidence of deterioration since Gallagher's prior employment. (*Id.*) This weighing of the medical evidence involves precisely the kind of analysis the regulations require, focusing on supportability, consistency, and longitudinal record.

The ALJ also weighed Gallagher's subjective complaints against the objective medical evidence. Gallagher reported disabling symptoms affecting his ability to sit, focus, and manage daily activities. The ALJ found evidence to the contrary and cited multiple clinical findings demonstrating full strength in both legs, normal sensation, intact gait, and the ability to sit for six hours in an eight-hour workday. (*Id*) These findings, as reported by Dr. Whittle and Dr. Fernandez, directly contradicted Gallagher's more limiting self-reports and supported the ALJ's conclusion that Gallagher retained the functional capacity for light work. (*Id.*)

The ALJ also considered Gallagher's daily activities in finding these activities inconsistent with the claimed degree of limitation, and appropriately took them into account when evaluating work-related abilities. The ALJ noted that there

9

were no reports of Gallagher requiring special allowances or experiencing significant work-related difficulties during his prior employment, which further substantiated the finding that he could perform at least the same level of work he had previously done. (*Id*).

The ALJ also made sufficiently specific findings regarding medical listings, addressing whether the frequency and severity of Gallagher's seizures met or equaled Listing 11.02 and determining that the record did not support the required frequency. (*Id.* at 24.) Gallagher argued that the ALJ should have addressed Listing 11.02 under a special heading, but the law only requires that the record reflect consideration of the relevant requirements, which the ALJ appropriately contemplated. (Doc. 10 at 17.)

Finally, the ALJ's RFC assessment incorporated all work-related limitations supported by objective evidence and medical opinions that the ALJ found persuasive. (Doc. 5 at 26-28.) The limitations were presented to the vocational expert, whose testimony established that Gallagher could perform positions available in significant numbers in the national economy. (*Id*). The ALJ followed governing regulations and legal standards in evaluating Gallagher's work abilities.

II. **Whether the ALJ failed to properly evaluate Gallagher's testimony of limitations**

Gallagher argues that the ALJ failed to properly make an RFC determination

by not adequately accounting for all of Gallagher's documented impairments and symptoms, particularly disregarding the functional limitations identified by consulting and treating providers as well as Gallagher's own testimony. (Doc. 8 at 10-14, 20-24.) An ALJ must consider a claimant's subjective testimony, but may discount it by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must also consider the entirety of the record, including objective medical evidence, daily activities, treatment history, and evidence from medical sources. 20 C.F.R. §§ 404.1529(c), 416.929(c). The Ninth Circuit has held that when an ALJ gives multiple valid reasons for discounting a claimant's testimony, the finding must be affirmed, even if one rationale could arguably be questioned, so long as the record supports at least one. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ appropriately explained his reasoning and did not arbitrarily disregard or improperly discount Gallagher's testimony of limitations. (Doc. 5.) The ALJ explicitly acknowledged Gallagher's reported symptoms, including his complaints of low back and left leg pain, daily headaches, memory and concentration difficulties, and frequent seizures. (*Id*. at 22) The ALJ summarized Gallagher's allegations in detail, noting both his testimony at the hearing and his reports to medical providers. (*Id.*)

Next, the ALJ evaluated Gallagher's testimony against the objective medical evidence and found multiple inconsistencies. Gallagher testified to disabling back, leg, and cognitive pain. (Doc. 8 at 12.) The ALJ found that the medical records repeatedly documented full strength in both legs, normal sensation, normal gait, and limited findings on imaging and examination. (Doc. 5 at 26.) The ALJ referenced the opinions of treating and reviewing physicians who found Gallagher capable of sitting six hours in an eight-hour day and performing light work, in direct contradiction to Gallagher's testimony that he could not sit for more than short periods. (*Id.*) The ALJ's reliance on medical evidence is permissible and directly addresses inconsistencies in Gallagher's statements, as required by 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ also considered Gallagher's daily activities and found them inconsistent with the degree of limitation described in his hearing testimony. Gallagher reported being able to perform household chores, shopping, meal preparation, laundry, and personal care independently, which the ALJ reasonably concluded was not reflective of someone as severely limited as alleged. (Doc. 5 at 28.) Social Security regulations permit an ALJ to consider inconsistencies between daily activities and alleged limitations in evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

When discrepancies existed, the ALJ resolved them with explicit, logical explanations supported by the record. The ALJ identified articulated five different reasons for discounting Gallagher's testimony—inconsistent objective findings, documented physical abilities, daily activities, inconsistent reports of seizure frequency, and lack of evidence of mental deterioration. (Doc. 5 at 24.) The ALJ did not substitute personal opinion for that of a medical professional but rather relied on the objective analysis of multiple qualified sources, and cited specific treatment records and observations instead of generalized inferences.

### III. Whether the ALJ properly made a disability assessment regarding Gallagher's seizure disorder

Gallagher argues that the ALJ failed to properly assess his seizure disorder by disregarding credible testimony and medical documentation showing frequent tonic-clonic seizures that could satisfy the requirements of Listing 11.02, while also failing to make explicit findings as to whether Gallagher's condition met or equaled the listing criteria. (Doc. 8 at 15-19.)

An ALJ is required to evaluate seizure disorders with reference to the medical evidence, claimant's testimony, and whether the frequency and severity of seizures meet or equal the relevant medical listing, specifically Listing 11.02 for epilepsy. 20 C.F.R. §§ 404.1529, 416.929. For a seizure disorder to be considered disabling under the listings, the record must establish a pattern of generalized

13

tonic-clonic or dyscognitive seizures at a prescribed frequency *despite adherence to treatment.* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02. The Ninth Circuit does not require an ALJ to organize the listing analysis under a particular heading so long as it is clear from the decision that the ALJ considered the regulatory criteria and made findings. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

The ALJ properly made findings and considered the regulatory criteria. The ALJ thoroughly documented Gallagher's history of seizure disorder and acknowledged his subjective reports of experiencing three or four tonic-clonic seizures per year. (Doc. 5 at 26.) The ALJ compared those reports against the objective medical evidence and found that the record substantiated only two grand mal (tonic-clonic) seizures and one episode of fainting in the more than three-year period at issue. (*Id.*)

The ALJ recounted Gallagher's own statements to providers, noting that in May 2022 Gallagher reported not having had a seizure since October 2021, and in August 2022 he again reported a seizure, while a further October 2022 hospitalization was attributed to syncope, not a seizure by Gallagher's own treating doctor. (*Id.*) The ALJ explicitly referenced these facts and reasonably found that Gallagher's subjective account of his seizure frequency was inconsistent with the clinical and treatment records. (*Id.* at 24.)

When assessing whether the seizures met or equaled Listing 11.02, the ALJ specifically determined that Gallagher's reported and documented seizure frequency fell below the listing threshold, which requires a minimum pattern of generalized tonic-clonic seizures at least once every two months for at least four consecutive months. (*Id.* at 24-26.) The ALJ may not have discussed Listing 11.02 with a separate heading. The record reflects, however, a clear and reasoned analysis showing that the requirements of the listing were not met. (*Id.*) Further, in accordance with regulatory guidelines, the ALJ considered whether Gallagher had been compliant with prescribed treatments, as required by Listing 11.02 analysis, and made no finding that there was noncompliance which would artificially lower the reported seizure frequency.

### IV.   Whether the ALJ properly made an RFC determination

Gallagher argues that the ALJ did not properly make an RFC determination because he failed to include all of Gallagher's documented impairments, particularly the limitations arising from seizures, cognitive deficits, and medical opinions restricting him to unskilled, slow-paced work. (Doc. 8 at 10-14, 20-24.) The ALJ's RFC assessment must account for all limitations supported by the medical evidence, claimant testimony, and the record as a whole, and must be based on objective findings, relevant medical opinions, and a claimant's activities of daily living. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.

15

The ALJ properly performed the RFC analysis for Gallagher in multiple respects. The ALJ began by thoroughly summarizing Gallagher's established medically determinable impairments ensuring that all significant conditions were identified at the outset of the RFC assessment. (Doc. 5 at 26-28.) To determine functional capacity, the ALJ relied upon an extensive review of the objective medical evidence, including repeated normal neurological findings and physical examinations demonstrating full strength in both legs, normal sensation, intact gait, and the ability to sit for six hours in an eight-hour workday as reported by Dr. Whittle and Dr. Fernandez. (*Id.*) The ALJ discussed Gallagher's MRI and diagnostic findings, noting mild to moderate abnormalities but not documentation of deficits that would support greater-than-light work-related restrictions. (*Id.*)

The ALJ then assessed Gallagher's subjective complaints, and found several aspects of his testimony were not consistent with the medical findings or his reported daily activities. (*Id.*) Gallagher was found to be capable of cleaning, preparing meals, doing laundry, and shopping, supporting the RFC for light work with appropriate limitations. (*Id.*) The ALJ reasonably concluded these activities were inconsistent with an inability to perform all work.

The ALJ's RFC was further supported by the persuasively weighed medical opinions of record. The ALJ considered and provided clear explanations for finding the opinions of Dr. Mozer and the state agency psychological consultants

unpersuasive, because they were inconsistent with Gallagher's demonstrated ability to work in a semiskilled position over an extended period and lacked objective support for any decline in his condition or mental abilities. (*Id.* at 24.) The ALJ was entitled to weigh the medical opinions according to consistency and supportability, thoroughly explaining the reasons for their relative weight, in accordance with 20 C.F.R. §§ 404.1520c, 416.920c.

Significantly, the RFC determination included restrictions appropriate to Gallagher's impairments, such as limiting him to light work with additional postural, mental, and environmental limitations that were specifically described in the hearing decision. (*Id.* at 26-28.) The ALJ then presented this precise RFC in hypothetical questions to the vocational expert, whose testimony established that jobs existed in significant numbers in the national economy matching this RFC. (*Id.*)

The process followed by the ALJ fully complied with SSR 96-8p, which requires discussion of supporting evidence, resolution of evidentiary inconsistencies, and a logical explanation for the effect of the symptoms on the ability to work. (*Id.*) The RFC was not the result of selective consideration but a balanced assessment that cited both supportive and contradictory evidence.

## CONCLUSION

The ALJ's decision is supported by substantial evidence and complies with applicable law. The ALJ properly evaluated Gallagher's work abilities by considering all relevant medical opinions, objective findings, and evidence of daily activities, as required by 20 C.F.R. §§ 404.1520c, 416.920c and SSR 96-8p. The ALJ gave specific, clear, and convincing reasons for discounting both Gallagher's subjective complaints and certain medical opinions.

When assessing Gallagher's seizure disorder, the ALJ properly explained why Gallagher's symptoms and medical documentation did not meet or equal Listing 11.02, consistent with 20 C.F.R. §§ 404.1529, 416.929. The record shows the ALJ appropriately reconciled evidence regarding seizure frequency and found the regulatory criteria unsatisfied.

The ALJ's RFC determination considered all impairments supported by the record and properly weighed the medical opinions, as required by 20 C.F.R. §§ 404.1545, 404.1520c, 416.945, 416.920c and SSR 96-8p. The RFC finding was then accurately presented to the vocational expert, whose testimony established that Gallagher could perform work existing in significant numbers in the national economy.

Accordingly, the ALJ's decision is free of legal error, supported by substantial evidence, and must be affirmed.

**ORDER**

Accordingly, **IT IS ORDERED:**

1. The Commissioner's final decision denying Gallagher's claim for Title II disability benefits and Title XVI supplemental security income benefits is **AFFIRMED.**

2. This case is **DISMISSED** with prejudice.

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 18th day of September, 2025

_____
Kathleen L. DeSoto
United States Magistrate Judge